# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMI ROSE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-3853 |
| | : | |
| ED PAWLOWSKI, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                                                                          **NOVEMBER 21, 2019**

Plaintiff Jimi Rose, a prolific litigator in this Court, brought a Complaint on August 23, 2019, against: (1) Ed Pawlowski, the former Mayor of Allentown; (2) Ray O'Connell, the Acting Mayor of Allentown; (3) the City of Allentown; and (4) unknown John Doe and Jane Roe, Inc. Defendants. Rose, who is black, alleges that he was the victim of a decades-long scheme that caused him to pay unnecessary trash collection fees on property he used to own whereas white property owners did not have to pay those fees. The Court also understands Rose to be alleging that, as a black property owner, he was illegally deprived of his property by being pressured to sell to politically-connected individuals.

Rose seeks to proceed *in forma pauperis*. He also filed a "Motion and Request for Court Ruling" asking that the Court rule on his claims.[1] (ECF No. 5.) For the following reasons, the Court will grant Rose leave to proceed *in forma pauperis* and dismiss the majority of Rose's claims as time-barred pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Although Rose has not stated a timely claim that is plausible, in an abundance of caution, he will be given leave to amend only

---

[1] Although Rose filed a single Motion, the Motion itself seeks rulings in three separate cases and was docketed in each respective action. To the extent Rose seeks a ruling in other cases, the Court will address his Motion in those cases.

as to certain claims, as discussed below. Rose's pending Motion will be denied as moot in light of this Memorandum and accompanying Order, which addresses his pending *in forma pauperis* Motion and Complaint.

I. **FACTS**[2]

    A. **Rose's Allegations in the Instant Case**

Rose owned property located at 2327 Hanover Avenue in Allentown, Pennsylvania, from 1994 until he sold that property after it was destroyed by a fire. Rose alleges that he used to operate a hotel on the premises. According to Rose, during his tenure as owner of the property, he was informed by the "Defendants' agents and employees" that he "could not operate his business unless he had a '**Dumpster a Recycling Container and a Grease Disposal Container.**" (Compl. ECF No. 2 at 2, ¶ 13.)[3] Rose contends that he "was paying Defendant City for trash collection despite never having received trash collection services from the Defendant City." (*Id.*)

Rose alleges that he "brought this to the attention of the Defendants" and was told that he was required to pay for trash collection services because there were "two 'apartments' on his business property." (*Id.* at 2, ¶ 14.) Rose objected but was informed that he was required to pay the fees if he wanted to keep his business open. (*Id.* at 2, ¶ 15.) Rose also alleges that other hotels or motels were not required to pay the same trash collection fees and that he was forced to pay them because he is African-American. (*Id.* at 3, ¶ 17.) According to "information and

---

[2] The following facts are taken from the Complaint and publicly available dockets and sources of which the Court takes judicial notice.

[3] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

2

belief" Rose alleges that "White Persons similarly situated did not have to pay" the fees to which Rose was subjected. (*Id.* at 4, ¶ 32.)

Rose avers that "it was not until after [his] establishment was damaged by fire that [he], once again, challenged the Defendant City about the overwhelming amount of taxes [he] had to pay for a service he never received." (*Id.* at 3, ¶ 21.) At this time, Rose allegedly became aware that Defendants Doe and Roe, Inc., who were friends of Pawlowski, wanted to purchase his property "for pennies on the dollar." (*Id.* at 3, ¶ 22.) The allegations about the transfer of ownership of Rose's property, including when it was sold and to whom, are unclear from the Complaint. Although Rose identifies an unknown John Doe Defendant and an unknown company as those who purchased his property, (*id.* at 1, ¶¶ 5-6 & 4, ¶¶ 30-31), he later alleges that his property was purchased by an individual named Abe Atiyeh, who is not identified as a Defendant. (*Id.* at 6, ¶¶ 46-48.)

Rose's allegations here are, again, somewhat confusing and conflicting. He alleges that even after his property was burned down, it was valued at $680,000, but his "agent" Timothy Rose, only received "$50,000 or less [from] Defendants and/or Abe Atiyeh." (*Id.* at 5, ¶ 43.) But Rose also alleges that when he asked the City for an audit of the taxes owed on his property "the Defendant City sold the property to Abe Atiyeh without delay," which seems to conflict with Rose's allegation that his agent sold the property. (*Id.* at 6, ¶ 48.) Rose also laments that the City of Allentown did not offer him money to "resurrect . . . or tear down his property" even though a "local White Businessman" received $200,000 to tear down a property that was set on fire by homeless individuals. (*Id.* at 5, ¶ 38.)

Based on the above allegations, Rose brings claims pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985 & 1986,[4] in connection with: (1) the allegedly racially-discriminatory imposition of fees and/or taxes for trash collection that he did not receive; and (2) the deprivation of his property "for pennies on the dollar" after it had burned down. His claims are mostly predicated on a pay to play scheme for which Pawlowski was later convicted on federal charges as discussed further below. According to Rose, "[i]t was not until the trial of the Defendant Ed Pawlowki [on those federal corruption charges], that [he] discovered, through the FBI's investigation, how the business of Racketeering and 'Pay to Play' was implemented in the Defendant City through, among other ways, collecting illegal taxes and fees for services never rendered." (*Id.* at 3, ¶ 27.) He claims that "[w]ere it not for the FBI and the Morning Call Newspaper reporting to the Public how the Scam was being Conducted, [he], to this date, would still not realize how he was a victim of the Defendants." (*Id.* at 5, ¶ 36.) Rose also alleges that O'Connell, Allentown's Acting Mayor, has "taken a page directly out of Defendant Pawlowski's playbook as the corruption and illegal discrimination continues unabated." (*Id.* at 6-7, ¶ 51.)

Perhaps anticipating that his claims may be time barred, Rose also attached to his Complaint a "Memorandum of Law and Argument," in which he argues that the statute of limitations should be tolled to allow him to move forward on his claims, which concern conduct going back approximately twenty years. (*Id.* at 8.) The crux of Rose's argument is essentially that his claims did not accrue until March of 2018, when Pawlowski's criminal trial took place and he allegedly learned of the former Mayor's wrongdoings. (*Id.*); *see also United States v. Pawlowski*, E.D. Pa. Crim. A. No. 17-390-1. Rose also alleges that the "Defendants continue to

---

[4] Rose also cites statutes that have no apparent applicability here, even under the most liberal construction of Rose's allegations, and which will not be discussed further. *See* 15 U.S.C. § 15b; 42 U.S.C. § 3001.

violate the Civil Rights and Liberties of Persons of Color by maintaining an open Practice of Racial Discrimination." (Compl. ECF No. 2 at 11.) Rose seeks compensatory damages in excess of $3 million and punitive damages in excess of $3 million.

### B. The Criminal Case Against Pawlowski

As background, "[o]n March 1, 2018, after a six-week trial, a jury convicted . . . Edwin Pawlowski, the former mayor of the City of Allentown, of 47 counts of corruption-related offenses arising out of his orchestration of a pay-to-play scheme while in public office to fund his campaigns for Governor of Pennsylvania and the United States Senate." *United States v. Pawlowski*, 351 F. Supp. 3d 840, 846 (E.D. Pa. 2018). "[T]he scheme involved various sub-schemes whereby Pawlowski, directly and through his operatives, agreed to steer City contracts or provide other favorable official action to companies, law firms, and individuals in exchange for campaign contributions and other items of value." *Id.* "Following a six-week trial, Pawlowski was convicted of 47 of the 54 counts against him." *Id.* at 847.

The indictment against Pawlowski issued on July 25, 2017, and was unsealed on July 26, 2017. *See United States v. Pawlowski*, E.D. Pa. Crim. A. No. 17-390-1 (ECF No. 1); *see also United States v. Pawlowski*, No. 17-390-1, 2017 WL 11350965, at *1 n.1 (E.D. Pa. Dec. 5, 2017) ("On July 25, 2017, Edwin Pawlowski, Scott Allinson, and James Hickey were charged in a 55-count Indictment with corruption-related offenses arising from an alleged pay-to-play scheme in which Pawlowski accepted over $150,000 in campaign contributions in exchange for the use of his official position."). In the days after, news of Pawlowski's indictment was widely publicized. Notably, the Morning Call, Allentown's local newspaper, published an article on July 27, 2017 reporting on the scheme described in the indictment. *See* Emily Opilo, et al., *Allentown Mayor Ed Pawlowski Put City Hall Up For Sale to Highest Bidders, Prosecutor Says*, The Morning Call

5

(July 27, 2017), https://www.mcall.com/news/breaking/mc-nws-allentown-mayor-ed-pawlowski-indictment-unsealed-fbi-20170725-story.html.

### C. Rose's Prior Cases and Loss of his Property

As noted above, Rose is a prolific filer in this Court. Many of his prior lawsuits raised race-discrimination claims stemming from Rose's operation of a business on the property he owned on Hanover Avenue in Allentown.[5] Rose has also been noted for his "history of frivolous litigation." *Rose v. Hoffman Ins. Consultants, LLC*, Civ. A. No. 16-02225, 2018 WL 3454930, at *5 n.5 (E.D. Pa. July 18, 2018), *aff'd,* No. 18-2736, 2019 WL 451277 (3d Cir. Jan. 30, 2019).

Relevant here, in 2010, Rose sued then-Mayor Pawlowski and other City of Allentown officials, alleging that they targeted him and other black property owners through racially-discriminatory police practices, while white property owners were treated more favorably. *See Rose v. Pawlowski*, E.D. Pa. Civ. A. No. 10-5274 (ECF No. 7 at 5) (alleging that Pawlowski "spearheaded the racial attacks that would ultimately close down Black and Hispanic

---

[5] *See Rose v. City of Allentown*, E.D. Pa. Civ. A. No. 02-3842 (ECF No. 30) (alleging that zoning officials in Allentown discriminated against Rose based on his race by enforcing zoning code against his strip club operated on the property on Hanover Avenue); *Rose v. City of Allentown*, E.D. Pa. Civ. A. No. 04-2853 (ECF No. 1) (raising essentially the same allegations including racial disparities in application of zoning laws); *Rose v. Commonwealth*, E.D. Pa. Civ. A. No. 12-5765 (ECF No. 1-2) (alleging that Rose was the victim of racial profiling by police when he was charged with violating the Pennsylvania Liquor Code at the establishment on Hanover Avenue; Rose alleged white business owners were not treated similarly); *Rose v. Pa. Liquor Control Bd.*, E.D. Pa. Civ. A. No. 13-5194 (ECF Nos. 1-2, 8) (same); *Rose v. Channel 69 News*, E.D. Pa. Civ. A. No. 13-2628 (ECF No. 3) (claiming that the news media falsely reported on the business being run at his property because he is black); *Rose v. The Morning Call Newspaper*, E.D. Pa. Civ. A. No. 15-2002 (ECF Nos. 4, 13, 19, 20) (claiming local newspaper and others discriminated against Rose based on race for publishing matters related to his business/property).

businesses"). The complaint, which is dated September 30, 2010 ("the 2010 complaint") describes the same scheme alleged in Rose's instant Complaint.[6]

In his 2010 complaint, Rose specifically alleged he "believe[d] that the Mayor is working for some of his campaign contributors to put pressure on the plaintiff so that the plaintiff will loose [sic] his property, and a campaign contributor will be justly rewarded by the unlawful practices of the city of Allentown officials." *Id.* (ECF No. 7 at 13.) Rose added that he sought to "expose the racism and the crime and corruption which is taking place in the city of Allentown officials by and through its city officials" and claimed that the mayor was attempting to "run [him] out of business so that the mayor[']s campaign contributors can take the property from him." *Id.* (ECF No. 7 at 9.)

Rose's 2010 complaint alleged that for fifteen years he was being forced to pay the City of Allentown for trash collection services he never received. *Id.* (ECF No. 7 at 10.) Rose also alleged that white-owned motels were not required to pay for the same trash collection services as Rose. *Id.* (ECF No. 7 at 10-12 (alleging that "[t]he city of Allentown officials has never charged any of the white owned and operated hotels and motels nor does the city of Allentown officials force these white owned motels who have bars attached to them, pay for city trash pick-up when the city does not pick up their trash.").) Rose added that the "defendants knew that if [he] could not pay his bills and his taxes he would loose [sic] his property and the defendants would be able to take control of [his] property without just compensation." *Id.* (ECF No. 7-1 at

---

[6] Rose was granted leave to proceed *in forma pauperis* in the 2010 case and was directed to complete certain forms so that the U.S. Marshal could make service. *Rose v. Pawlowski*, E.D. Pa. Civ. A. No. 10-5274 (ECF No. 6). When he failed to do so, the Court dismissed his case on December 30, 2011. *Id.* (ECF No. 10). Upon Rose's motion, the Court gave him another opportunity to complete the forms, but he again failed to do so. *Id.* (ECF No. 12). Accordingly, the Court declined to reopen the matter. *Id.* (ECF No. 13).

7

2.) Indeed, Rose even used the term "pay to play" in describing the scheme. *Id.* (ECF No. 7 at 8 (averring that "city officials give unlimited contracts to Tommy Williams [identified as a white man who owns City Line Construction and is catered to by Allentown city officials] in exchange for kick backs **in other words you have to pay to play**") (emphasis in original).)

Rose has also filed several lawsuits stemming from the fire at his property, which is referred to in his Complaint in the instant matter, and his former tenant's use of that property. *See Rose v. Husenaj*, E.D. Pa. Civ. A. No. 16-6705; *Rose v. Hoffman Ins. Co.*, E.D. Pa. Civ. A. No. 16-2225; *Rose v. Husenaj*, E.D. Pa. Civ. A. No. 14-4288. Documents attached to Rose's amended complaint in a case he filed in August of 2016 indicate that the fire occurred on May 8, 2013. *Rose v. Hoffman Ins. Co.*, E.D. Pa. Civ. A. No. 16-2225 (ECF No. 9-1 at 4); *see also Rose v. Farmer's Fire Ins. Co.*, No. 2683 EDA 2016, 2017 WL 3098609, at *1 (Pa. Super. Ct. July 21, 2017) (noting, in addressing Rose's appeal of order denying his motion to set aside a settlement of insurance claims related to the fire, that "[o]n May 8, 2013, a fire occurred at the property, causing significant damage"). A search of publicly available property records in Lehigh County indicates that Rose sold his property to Timothy R. Rose Sr. (identified in Rose's instant Complaint as his "agent") in October of 2015, and that the property was sold to Willow Race LLC in September of 2016. *See* Lehigh County, *Property Search – Public*, https://www.lehighcounty.org/Departments/Assessment-Home/Search-Records (search "2327 Hanover Ave" in Address search field). An article in the Morning Call on October 14, 2016 reported that Abe Atiyeh was the new owner of the property. *See* Anthony Salamone, *New Owner of Controversial Strip club Wants to Raze it, Put up a Billboard*, The Morning Call (Oct. 14, 2016), https://www.mcall.com/business/mc-scoobies-strip-club-billboard-20161014-story.html.

8

## II. STANDARD OF REVIEW

The Court grants Rose leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by*, *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As Rose is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"Federal civil rights claims under §§ 1981, 1982, 1983, and 1985 are subject to the state statute of limitations for personal injury actions."[7] *Guarrasi v. Gibbons*, Civ. A. No. 07-5475,

---

[7] Section 1981 prohibits race discrimination in the making and enforcing of contracts, but Rose does not mention any contracts in his Complaint. Liberally construing the Complaint, the only possible basis for a § 1981 claim would seem to be the sale of Rose's property, presumably pursuant to a contract. This claim is governed by a two-year statute of limitations. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382-83 (2004); *Ke v. Ass'n of Pa. State Coll. & Univ. Faculties*, 447 F. App'x 424, 426 (3d Cir. 2011) (per curiam).

2008 WL 4601903, at *5 (E.D. Pa. Oct. 15, 2008); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989). In Pennsylvania, that limitations period is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa. Cons. Stat. § 5524. Pennsylvania, however, employs the "discovery rule" that delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that he is injured and by what cause. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Claims under § 1986 are governed by a one-year statute of limitations. 42 U.S.C. § 1986.

As noted above, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). The Court may consider matters of public record as well as documents integral to or explicitly relied upon in the complaint in undertaking this analysis. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may take judicial notice of newspaper articles and other court dockets. *See Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 162 n.5 (3d Cir. 2004); *see also Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 (3d Cir. 2014); *In re Briscoe*, 448 F.3d 201, 221 & n.9 (3d Cir. 2006). Indeed, "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Here, the allegations of the Complaint, newspaper articles of which the Court has taken judicial notice, and Rose's own filings in prior litigation reflect that he was aware, or should have been aware with the exercise of due diligence, of the events giving rise to his claims more than two years before he filed his Complaint on August 23, 2019. As set forth in detail above, *see supra* § I.C., Rose raised essentially identical allegations—namely, allegations about

10

racially-discriminatory fees for trash collection that he was obligated to pay and Pawlowski's establishment of a pay to play scheme that adversely impacted black property owners in Allentown—in a September 30, 2010 complaint he filed against Pawlowski and other Allentown officials. *See Rose v. Pawlowski*, E.D. Pa. Civ. A. No. 10-5274 (ECF No. 7).

It is also apparent from public documents that Rose knew or should have known that the property on Hanover Avenue had been sold in 2016. The allegations in the 2010 complaint reflect that Rose was well-aware of the alleged scheme that led to the sale of his property for "pennies on the dollar." In any event, the indictment against Pawlowski was unsealed on July 26, 2017 and published by the Morning Call, a local paper to which Rose refers in his Complaint, on July 27, 2017, which is more than two years before Rose filed his Complaint. Considering all the publicly available sources and Rose's own prior allegations, the Court concludes that there is no basis for tolling of Rose's claims related to the property at 2327 Hanover Avenue. These claims will be dismissed with prejudice because it is apparent that Rose cannot cure the defects in those claims. *See Washington v. Philadelphia Police Dep't, Homicide Unit, Sup'rs Auth. Officials*, 531 F. App'x 204, 205 (3d Cir. 2013) (per curiam) (affirming dismissal of claims as time-barred under § 1915 where district court concluded that plaintiff was not entitled to tolling because "he had filed habeas petitions in 2007 and 2009, asserting similar claims"); *Alexander v. Fletcher*, 367 F. App'x 289, 291 n.2 (3d Cir. 2010) (per curiam) (in concluding that claims were time barred, taking judicial notice of public dockets to determine date that plaintiff was held pursuant to legal process); *Shakuur v. Costello*, 230 F. App'x 199, 201 (3d Cir. 2007) (per curiam) (affirming dismissal of complaint as time-barred after taking judicial notice of the Philadelphia Prison System's internal grievance procedure).

However, Rose alleges that the City and its current Mayor continue to engage in discriminatory practices. Those claims are not time-barred, but they fail because they are not plausible. Other than his bald allegation that generally discriminatory conduct continues, Rose has not alleged any specific actions taken by O'Connell or describing how he was impacted by any allegedly discriminatory municipal policies apart from the claims related to his property. In other words, he has failed to allege any facts establishing that he is entitled to relief. As it is feasible Rose could state a claim with more information, he will be entitled to file an amended complaint in the event he can allege a basis for a claim that does not concern the property at 2327 Hanover Avenue.

IV. CONCLUSION

For the foregoing reasons, the Court will grant Rose leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Rose's claims related to the fees for trash-collection services and the sale of his property are dismissed with prejudice as time-barred. To the extent Rose asserts claims within the limitations period, those claims are dismissed without prejudice for failure to state a claim. In light of Rose's *pro se* status, he will be given an opportunity to file an amended complaint, but only as to the claims the Court dismissed without prejudice. An appropriate Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**